UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA REYNOLDS, Individually and on behalf of others similarly situated,<br>      Plaintiff, | :<br>:<br>:<br>: Case No. 2:24-CV-01422 |
| v. | :<br>: Judge Algenon L. Marbley |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | :<br>: Magistrate Judge Elizabeth P. Deavers<br>: |
|       Defendant. | :<br>: |

**OPINION & ORDER**

This matter comes before this Court on Defendant Air Line Pilots Association ("ALPA") Motion to Transfer Venue (ECF Nos. 23, 31) and Alternative Motion to Dismiss (ECF Nos. 24, 32). For the reasons that follow, the Motion to Transfer Venue filed in response to Plaintiff's Amended Complaint (ECF No. 31) is **GRANTED**. Accordingly, the pending motion to transfer venue filed in response to the original complaint (ECF No. 23), and motions to dismiss filed in response to the original and Amended Complaint (ECF Nos. 24, 32) are **DENIED AS MOOT**.

        **I.**        **BACKGROUND**

This case is a proposed class action brought by Plaintiff, a pilot employed by United Airlines, Inc. ("United") who has remained on Long Term Disability since September 2017. (ECF No. 28 ¶¶ 1, 2). Plaintiff was a member of ALPA, a labor organization headquartered in Virginia and representative of United's pilots. (*Id.* ¶¶ 1, 26, 27). The claims arise from a Collective Bargaining Agreement between United and ALPA effective September 29, 2023 ("2023 CBA"). (*Id.* ¶ 3). The 2023 CBA increased the benefits for pilots eligible for Long Term Disability on or after the 2023 CBA's effective date as well as a number of pilots previously on Long Term Disability for long COVID. (*Id.* ¶ 4). Plaintiff alleges that, as a result of ALPA's "utter disregard"

for Plaintiff and those similarly situated, pilots with disabilities before the 2023 CBA's effective date were excluded from the increased benefits. (*Id*.). Plaintiff now brings a claim for breach of the duty of fair representation under the Railway Labor Act, 45 U.S.C.A. § 151, *et seq*.

Before finalizing the terms of the 2023 CBA, ALPA and United signed a Letter of Agreement that increased the maximum amount of benefits that certain pilots on LTD could receive; but, this only applied to pilots whose date of disability occurred on or after October of 2021. (*Id*. ¶ 34). ALPA representatives were notified of concerns raised by United pilots, including Plaintiff, who was on LTD and excluded from the increased benefits under the Letter of Agreement. (*Id*. ¶ 35). Plaintiff claims that ALPA representatives reassured them that the Letter of Agreement was temporary. (*Id*. ¶ 35). The excluded pilots were further informed that their eligibility would be negotiated and reflected in the 2023 CBA. (*Id*.). That information offered false reassurance, as the 2023 CBA went into effect on September 29, 2023, with increased LTD benefits applying only to pilots whose date of disability was on or after the effective date. (*Id*. ¶ 37). In response to further complaints about exclusion, Plaintiff claims that ALPA representatives told certain pilots that it was not permissible to offer them the negotiated benefits. (*Id*. ¶ 49).

Although ALPA representatives claimed to be unable to negotiate eligibility of Plaintiff and those similarly situated into the 2023 CBA, ALPA successfully negotiated a carveout for roughly 25 of the 700 pilots who were also on LTD before the effective date. (*Id*. ¶ 44). Eligibility for this small group of pilots was provided for in the Long Haul COVID Settlement Agreement and allowed these pilots to be part of the LTD benefits provided by the 2023 CBA. (*Id*.). The increased benefits enabled eligible pilots to receive up to $15,975.14 per month in LTD benefits. (*Id*. ¶ 39). Plaintiff and those similarly situated, however, receive a benefit up to $8,000.00 or $11,000 depending on date of disability. *Id*.

2

On March 28, 2024, Plaintiff filed her complaint and later amended it in July 2024 ("Amended Complaint"). In the Amended Complaint, she claims ALPA was arbitrary, discriminatory, and irrational in its failure to negotiate for increased benefits for Plaintiff and other pilots similarly situated who were on LTD before September 29, 2023. (*Id*. ¶ 40). Plaintiff also claims the failure to negotiate was intentional, and part of a concerted effort to exclude the pilots from benefits. (*Id*. ¶¶ 40–42). Plaintiff alleges ALPA breached its duty of fair representation by failing to negotiate for the inclusion of Plaintiff and the proposed class members, making false or misleading statements about their eligibility, and lying about being unable to negotiate new LTD terms. (*Id*. ¶¶ 62–64).

Plaintiff explains she brought this case to this forum because she is a resident of Newark, Ohio, and has difficulty traveling outside this District due to osteoarthritis of the back and osteopenia. (ECF No. 35 at 2). Plaintiff also asserts that "[a]nother venue is not preferrable over the present one. Much of the conduct discussed in this Complaint, including negotiation discussions amongst local councils regarding the 2023 CBA and communications with putative class members regarding negotiation of LTD benefits, took place across various locations in the U.S." (*Id*. ¶ 21).

On June 18, 2024, Defendants filed a Motion to Transfer Venue and an Alternative Motion to Dismiss. (ECF Nos. 23, 24). Plaintiff subsequently filed an Amended Complaint to which ALPA again filed a Motion to Transfer Venue and an Alternative Motion to Dismiss. (ECF Nos. 28, 31, 32). ALPA also filed an Appendix which provides, among other things, several declarations in support of its motions. (ECF No. 33). The declarations assert that ALPA's representation of airlines is through twelve local councils corresponding to the airline's twelve pilot bases. (*Id*. at 3, 10-11). Other local councils for United pilots are located in the New York City area, Chicago,

Houston, Denver, Cleveland, Orlando, the Washington DC area, San Francisco, Los Angeles, Las Vegas, and Guam. (*Id*.). Elected representatives of each local council comprise ALPA's governing body, the United Master Executive Council ("MEC"). Activities on behalf of the United pilots are coordinated by the MEC, as it is responsible for negotiation, administration, and enforcement of collective bargaining agreements between ALPA and United. (*Id*. at1 2, 9-10). The United MEC's primary office and work coordinated by the MEC—including collective bargaining, contract administration and enforcement, member communication, and grievance processing—is in the Chicago area in the Northern District of Illinois along with United's headquarters. (*Id*. at 10). The declaration also clarified that some negotiations were "held in Texas, Colorado, Minnesota, and Arizona," but none was in Ohio. (*Id*. at 13). The in-person negotiations "primarily occurred at United's offices in Chicago, IL and the United MEC office in Rosemont, IL, pursuant to an agreement between ALPA and United." (*Id*.).

In its motions, ALPA argues venue is improper here and requests this Court transfer this case to the Northern District of Illinois. (ECF No. 32). Alternatively, ALPA moves to dismiss the Amended Complaint under Rules 12(b)(1) and (6). (ECF No. 32).

## II.    STANDARD OF REVIEW

### A.  Venue

Venue is proper under 28 U.S.C. § 1391(b) in: (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) "if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. For the purposes of venue, a defendant that is an entity, "whether or

4

not incorporated" resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2).

Personal jurisdiction over a defendant may be general or specific, depending on the nature of the defendant's contacts with the forum state. *Bird v. Parson*, 289 F. 3d 865, 873 (6th Cir. 2002). General jurisdiction exists when a defendant's contacts are sufficiently "continuous and systematic" to justify jurisdiction over claims unrelated to those contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction exists over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires*, 564 U.S. at 923 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The plaintiff must show the defendant "purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).

### B. Transfer

If venue is improper, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court's decision whether to dismiss or transfer is within its sound discretion. *Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 652 (6th Cir. 2016). Even if venue is proper under § 1391(b), a court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a); *see also MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-CV-0937,

5

2007 WL 2781669, at *2 (S.D. Ohio Sept. 24, 2007) (stating § 1404(a) permits a court to transfer a case "properly filed in a particular district if the transfer would further the convenience of the parties and the witnesses and be in the interest of justice.").

### III. LAW & ANALYSIS

ALPA argues venue does not lie in this district under § 1391 because no part of the challenged acts occurred in this state. (ECF No. 31 at 8). In her Amended Complaint, Plaintiff claims that venue is proper because ALPA resides in this district, is subject to personal jurisdiction, and does business here. (ECF No. 28 ¶ 15). Moreover, in her oppositions to the Motion to Transfer Venue and the Alternative Motion to Dismiss, Plaintiff only maintains that venue is proper because this is a judicial district in which ALPA resides under § 1391(b)(1). (ECF Nos. 34, 35).

#### A. Whether Venue Is Proper

Only specific jurisdiction is at issue. Plaintiff does not argue this Court has general jurisdiction over ALPA and Plaintiff has not alleged facts to suggest general personal jurisdiction exists. (ECF No. 34 at 7). With respect to specific personal jurisdiction, the Sixth Circuit has set forth three requirements: (1) "the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) there must be a showing that the claims "arise out of or relate to the defendant's contacts with the forum state;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (internal citations and quotations omitted).

##### 1. Purposefully Avail

Purposeful availment exists if there is a "'substantial connection' with the forum state" created by the defendant "engaging in 'significant activities within [the] State,' or by creating

6

'continuing obligations' to residents in that state." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). When addressing this requirement, "the focus is on 'the defendant's contacts with the forum State itself.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

ALPA is a bargaining representative for over one thousand Ohio pilots and over 400 are United pilots. (ECF Nos. 34 at 7; 41 at 10 ). ALPA also has a local council in Cleveland for United pilots and another local council in this District for pilots of PSA Airlines. (ECF Nos. 34 at 7; 32 at 21). Plaintiff argues these activities demonstrate ALPA has purposefully availed itself. (ECF No. 34 at 7). Indeed, these activities are intended to be ongoing in nature and ALPA has created ongoing obligations. Defendant does not seem to argue whether this factor is met, but instead argues that Plaintiff's claims do not "arise from or relate to" these activities. (ECF No. 41 at 10-14).

### 2. Arise From or Relate To

Plaintiff's claims must "arise out of or relate to" the "forum state" contacts. *Sullivan*, 79 F.4th at 670. The "arise from or relate to" requirement contains two parts: "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Sullivan*, 79 F.4th at 672 (6th Cir. 2023) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).

Instructive precedent here, discussed by both parties, is *Ford*. There, the Supreme Court held that specific personal jurisdiction existed over Ford with respect to products liability claims, even though Ford did not manufacture or sell the vehicles at issue in the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). The Court found that, while jurisdiction was appropriate as Ford advertised in the forum state, sold other cars there, was involved in regularly maintaining and repairing the cars in those states, and Ford sent replacement

7

parts to those states. *Id.* at 365–66. All of those activities made Ford money. *Id*. The Court also noted that the plaintiffs were residents of the forum state, they used the defective products in the forum states, and they suffered injury in the forum states. *Id.* at 1031.

As in *Ford*, Plaintiff's claims relate to ALPA's activities. As Plaintiff identified, ALPA has local council in Ohio. This local council is charged with representing Ohio pilots and an elected representative from the local council is part of the MEC, thus, is involved with negotiating collective bargaining agreements for its Ohio pilots. While the relevant agreement may not have been created or negotiated in the local council, nonetheless, the local council's activities are related to the negotiation of these agreements—the primary issue in this case. Just as Plaintiff explains, she "is harmed in Ohio, as she resides here and is deprived of her benefits here." (ECF No. 34 at 8-9).

ALPA unconvincingly emphasizes the activity with the state was not made within the Southern District of Ohio. For example, ALPA explains that the only activity directed at this district is that connected with the local council for PSA Airlines while the local council for United is in Cleveland "except that city has the further distinction of being outside of this district and therefore is treated as being in a separate state." (ECF No. 41 at 12 (citing 28 U.S.C. § 1391(d)). The contact in this specific district, however, is only controlling for corporations. 28 U.S. Code § 1391 ("For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ."). ALPA is an unincorporated entity with residency "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the

civil action in question." (ECF No. 28 ¶ 26). This Court's specific personal jurisdiction analyzes the forum *state*. See *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) ("the Specific jurisdiction 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (quoting *Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 502 (6th Cir. 2020)).

Indeed, ALPA's only local council in this district is for a separate airline, but ALPA has local council for United in this state. The local council in Cleveland is a compelling argument for the "arise from or relate to" factor. Representatives elected at each airline's local councils are involved with the MEC which ALPA describes as the "governing body charged with coordinating all ALPA representational activity at that airline, including the negotiation and administration of collective bargaining agreements." (ECF No. 34-1 at 2). Thus, the local council in Cleveland represents United pilots in Ohio, like Plaintiff, and also has an elected representative comprising the MEC that is involved with the types of activities at issue in this case. This sufficiently relates to Plaintiff's claims to establish the "arise from or relate to" component.

The "arise from or relate to" component is thus met for personal jurisdiction.

### 3. Reasonableness

There is a presumption of reasonableness when the first two requirements are met. *Sullivan*, 79 F.4th at 674. This is because "[w]hen a defendant avail[s] himself of the privilege of conducting business in the forum state and 'his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id*. (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174). (internal quotations omitted). With this presumption in mind, courts consider whether exercising

9

personal jurisdiction would be reasonable and "comport with traditional notions of fair play and substantial justice." *See id*. (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267–68 (6th Cir. 1996). When determining the reasonableness of exercising jurisdiction, courts weigh factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016). When the first two elements of the test are met, "only the unusual case will not meet this third criterion." *Id*. (quoting *Theunissen*, 935 F.2d at 1461) (internal quotation marks omitted).

This case is not unusual, and exercise of jurisdiction is reasonable. ALPA demonstrates a burden of its non-party witnesses primarily located in Illinois and the lack of interest in this forum due to the small number of United pilots residing in Ohio. (ECF No. 32 at 24). This, however, overlooks ALPA's presence in this state. (ECF No. 32 at 24). ALPA only has 12 local councils for representing United pilots, one of which is located in Ohio. As this Court explained above, this representation includes an elected representative involved in the MEC. (ECF No. 24-1 at 2). This demonstrates ALPA purposefully placed in Ohio the representatives for United pilots and this representation has direct involvement in the governing body responsible for the issues *sub judice*. ALPA has not presented anything to overcome the inference of reasonableness.

As such, the three requirements for specific personal jurisdiction are met, thus, venue is proper.

### B. Motion to Transfer

Even where venue may be proper, 28 U.S.C. § 1404(a) allows the Court to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice." Courts considering transfer under § 1404(a) must first determine whether the requested transferee forum provides a

proper venue for the action. *See e.g.*, *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 169 (S.D. Ohio 2012). As the Supreme Court explained, the statute "does not condition transfer on the initial forum's being 'wrong'." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Instead, it "permits transfer to any district where venue is also proper"—that is, "where the case might have been brought." *Id.*

Once the court determines that the action could have been brought in the alternative venue, it proceeds to consider whether transferring the case would serve the convenience of parties and witnesses and otherwise promote the interest of justice. *See Tanyike v. United States*, 603 F. Supp. 3d 572, 580 (S.D. Ohio 2022). A court, guided by a number of private and public interest factors, enjoys "broad discretion" when making this determination. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Those factors include:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*See Tanyike*, 603 F. Supp. 3d at 580 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

Transfer is inappropriate, however, when it merely shifts the burden of inconvenience. *See Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). A plaintiff's choice of forum is therefore entitled to "great deference" and "should only be rejected if the above factors weigh heavily in favor of the defendant." *In re Richardson-Merrell, Inc.*, 545 F. Supp. 1130, 1132-33 (S.D. Ohio 1982); *see also Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 672–73 (S.D. Ohio 2011) (noting that there is "a strong presumption in favor of a plaintiff's choice of forum," which may be overcome "'only when the private and public interest factors clearly point

towards trial in the alternative forum.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). By contrast, a plaintiff's choice of forum is "given little weight" if "none of the conduct complained of occurred in the forum selected by the plaintiff." *Capitol*, 801 F. Supp. 2d at 672–73 (internal quotation marks and citations omitted).

The moving party bears the burden of establishing that transfer is warranted to allow for the litigation to proceed in a more convenient forum, not merely "a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46; *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002).

ALPA requests this Court transfer this case to the Northern District of Illinois for the convenience of parties and witnesses and in the interest of justice. (ECF No. 31 at 10). ALPA has demonstrated this cause of action's connection with the Northern District of Illinois, as it is the location of the United MEC office charged with the decisions relevant to this case, and the place of a substantial part of the alleged conduct. (ECF No. 31 at 10). There is no dispute that the case could have been brought in the Northern District of Illinois. (ECF Nos. 31 at 10; 35 at 3-12). This Court must now consider the of private and public interest factors to determine whether transfer would serve the convenience of parties and interests of justice.

1. *Private Interest Factors*

Private interest factors include convenience of witnesses, where the operative facts occurred, the location of the documentary evidence, and possibility of prejudice in either the forum or the transfer states. *W. Am. Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990). While the plaintiff's choice of venue should typically be given considerable weight, such choice is given less weight when the cause of action "has little connection with the chosen forum." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902-03 (S.D. Ohio 2013).

12

*a. Convenience of the Witnesses*

Plaintiff's claims arise from the 2023 CBA, and in response, ALPA asserts that the agreement was mainly negotiated in the Northern District of Illinois. (ECF No. 31 at 1). ALPA also asserts that there are non-party witnesses who "are concentrated in the Northern District of Illinois, beyond this Court's subpoena power." (*Id*. at 14). It is well-established that "[t]he convenience of non-party witnesses . . . 'is more important than the convenience of party witnesses on either side.'" *Cole v. JPMorgan Chase Bank, N.A*., No. 2:15-cv-2634, 2016 WL 4491734, at *11 (Aug. 25, 2016 S.D. Ohio). In fact, their convenience "is considered one of the most important factors in determining whether to grant a motion to change venue . . . ." *In re Hotel TVPRA Litig*., No. 2:22-CV-1924, 2023 WL 3075851, at *18 (S.D. Ohio Apr. 25, 2023). Nonetheless, the number of witnesses is less important than the significance of their expected testimony and "a court can only properly assess its importance with information about the witnesses and their material testimony." *Id*.; *Fryda v. Takeda Pharms. N. Am., Inc*., No. 1:11-CV-00339, 2011 WL 1434997, at *3 (N.D. Ohio Apr. 14, 2011).

ALPA has sufficiently demonstrated the convenience factor weighs in favor of transfer. ALPA provided a list of twelve "key nonparty witnesses and their affiliations, titles, potential subjects of testimony, and work and residential locations." (ECF No. 31 at 5–6). This list includes seven United employees located in Illinois. (*Id*.). There are also former ALPA officials and employees, a former United employee, and a United contractor. (*Id*.). Some of the roles held by these potential witnesses during the relevant period include the United MEC Coordinator and Senior Labor Relations Counsel, Vice President of Human Resources and Labor Relations, and Managing Director of Pilot Contract Administration. ALPA explains that each of these non-party witnesses either reside, work, or have worked out of offices in the Northern District of Illinois.

13

(*Id*.). These witnesses are purported to offer testimony on the negotiation and implementation of the agreements at issue including the Letter of Agreement and the 2023 CBA. (*Id*.). Anticipated testimony also includes information regarding the Long-Haul COVID dispute (presumably related to the Long-Haul COVID Settlement referenced in the Amended Complaint), and the administration of the LTD claims and benefit records. (*Id*.). In a case alleging wrongful conduct by way of negotiations, agreements, denied benefits, and misrepresented information, these are all relevant topics.

Plaintiff's opposition attacks the location of six of the identified witnesses and asserts that they appear to live well outside the Northern District of Illinois. (ECF No. 35 at 4–5). This impacts the weight of the witness presence in the Northern District of Illinois, but it does not eliminate the convenience of the remaining witnesses who are purported to offer relevant testimony. More significantly for this analysis, however, is that no witness living in or near Ohio has been identified. Plaintiff fails to argue that the Southern District of Ohio would be convenient for any witness or that the Northern District of Illinois would be inconvenient.

Plaintiff also contests the relevance and superfluous nature of the purported testimony by the identified potential witnesses. (ECF No. 35 at 5). She argues the description of the anticipated testimony includes conclusory statements with "bareboned" descriptions that ""do not permit a court to 'ascertain whether the witness' anticipated testimony is likely to add any real value to the proceedings.'" (*Id*. (quoting *Ctr. for Med. Progress v. Becerra*, No. 8:20-cv-00891-JLS-DFM, 2020 WL 7786536, *6 (C.D. Cal. Nov. 12, 2020)). In *Becerra*, for example, the court rejected the convenience of witnesses argument when the witness descriptions were conclusory and failed to explain their proposed witnesses' roles or evidence about the quality of the testimony. *Becerra*, 2020 WL 7786536, at *6. Here, ALPA has not suffered from the same failure identified in *Becerra*.

ALPA provided each witness's role during the relevant period, affiliation, and relevant topics. For example, ALPA has demonstrated that John Schleder, former United MEC Coordinator and Senior Labor Relations Counsel and former ALPA employee, will potentially provide testimony on the negotiation and administration of the Letter of Agreement, the 2023 CBA, and the Long-Haul COVID dispute, all topics of which are significant matters for this case. The fact that some witnesses are anticipated to provide testimony on the same topic does not weigh against transfer, as ALPA demonstrated their distinct roles during the relevant time and there are no non-party witness identified that live in Ohio.

Based on the key non-party witnesses identified, the proposed forum is likely to be more convenient for non-party witnesses than this forum. This factor weighs heavily in favor of transfer.

b. *Locus of Operative Facts and Access to Proof*

ALPA argues that most or all of the events giving rise to this case occurred in the Northern District of Illinois. (ECF No. 31 at 16-17). Plaintiff, rather than dispute the location of the evidence, argues that this is a neutral factor. (ECF No. 35 at 10). Indeed, without "identifying some documentary evidence that would be unavailable in this district or is too bulky or difficult to transport, this factor matters little." *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *19 (S.D. Ohio Apr. 25, 2023) (quoting *A.C. v. Red Roof Inns, Inc., No. 2:19-CV-4965*, 2020 WL 3256261, at *3 (S.D. Ohio Jun. 16, 2020)); *see also Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D. N.Y. 2007), *aff'd*, 599 F. 3d 102 (2d Cir. 2010) ("[L]ocation of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

Although ALPA has demonstrated the Northern District of Illinois is the main location for the events giving rise to Plaintiff's claims, ALPA has not identified why it would be too

15

burdensome to transfer any records; thus, transfer would "merely shifts the burden of inconvenience" with respect to the access to proof. *See Van Dusen*, 376 U.S. at 645–46. As such, this factor is neutral.

### c. Plaintiff's Choice of Forum

Plaintiff is an Ohio resident and chose to file this lawsuit in the Southern District of Ohio. Typically, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 WL 5250435, at *5 (S.D. Ohio Sept. 3, 2020) ("A plaintiff's choice of venue . . . holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). That said, where "'the cause of action has little connection with the chosen forum," a plaintiff's choice of forum is "given less weight than such choice would be given otherwise.'" *DRFP*, 945 F. Supp. 2d at 902-03 (quoting *Armco, Inc. v. Reliance Nat. Ins.*, No. C-1-96-1149, 1997 WL 311474, at *3 (S.D. Ohio Mar. 30, 1997)). ALPA maintains that Plaintiff's choice of forum is entitled to little weight here because of the lack of connection to this forum. (ECF No. 31 at 12). Plaintiff does not dispute the assertion of the lack of connection with this forum, but nonetheless argues her choice of venue is entitled to deference and weighs against transfer. (ECF No. 35 at 8).

ALPA has demonstrated that there is *no* connection between the events at issue in this district. ALPA's only connection with this district is through a local council for PSA airlines, not United. Accordingly, Plaintiff's choice of forum is neutral.

16

*2. Public Interest Factors*

The public interest to be considered under § 1404(a) includes "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour v. Scottsdale Ins. Co.,* 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002) (citing *Gulf Oil*, 330 U.S. at 508).

ALPA maintains that judicial economy and the Court's familiarity with governing law and the interests of justice weigh heavily in favor of transfer. (ECF No. 31 at 17). ALPA references four duty of fair representation cases pending against ALPA involving United pilots in the Northern District of Illinois and asserts that transfer would be to a district "well-versed in the principles involved in the duty of fair representation." (*Id*. at 18). Plaintiff properly contests this assertion, indicating that it is untenable to provide that "all like claims arising against a national defendant under a federal law must be determined under only one circuit's law – regardless of the underlying facts or location of the parties." (ECF No. 35 at 12).

This Court finds the judicial economy, governing law, and interest in justice weigh in favor of transfer. ALPA has clarified that three of the ALPA cases involving United pilots in the Northern District of Illinois are cases before a single judge and involve collective bargaining agreement interpretation and application of "the same contractual grievance provisions and procedures at issue in the instant action."[1] (ECF No. 40 at 12-13). Indeed, "there is much to be said from an interests-of-justice perspective for applying the same law to [all] cases rather than Sixth Circuit

---

[1] The pending cases with "the same contractual grievance provisions and procedures at issue in the instant action" are: *Wickstrom v. ALPA*, Case No. 1:23-cv-02631 (N.D. Ill.); *Engstrom v. ALPA*, Case No. 1:23-cv-15792 (N.D. Ill.), and *Oka v. United*, Case No. 2:23-cv-00135 (N.D. Ill.)

law to one case and Seventh Circuit law to the other[s]." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

ALPA also urges this Court transfer this case to the Northern District of Illinois due to the local interest in resolving the matter. (ECF Nos. 31 at 19; 40 at 12). ALPA consistently argues that the activity giving rise to Plaintiff's claims predominately took place in or near the Northern District of Illinois. (ECF No. 31 at 19). This includes the "negotiation, administration, and enforcement" of the relevant agreements Plaintiff takes issue with throughout her Amended Complaint. (ECF No. 31 at 19). Additionally, Plaintiff was based at the airport in Chicago and was an active member of ALPA's Chicago local council. (ECF No. 33 at 3). Indeed, there is one United pilots local council in Ohio which is connected to the MEC through an elected representative. The local council is nonetheless in a separate district. On the other hand, the United MEC's office for coordinating United's pilots is in the Northern District of Illinois along with United's headquarters. (ECF Nos 31 at 19; 32 at 6; 33 at 10).

Plaintiff declares ALPA's argument is irrelevant because: (1) United Airlines is not a defendant in this case; (2) ALPA is headquartered in Virginia; (3) Reynolds resides in this district; and (4) this litigation affects United pilots who are scattered throughout the United States. (ECF No. 35 at 12). She concludes that "this case is therefore not uniquely tied to Illinois, any more than it is to" any other state. (*Id*.). This argument is helpful for deciding whether venue is proper, but it is not compelling for deciding whether to transfer venue under § 1404(a). Section 1404(a) allows the transfer of venue "[f]or the convenience of parties and witnesses, in the interest of justice." As this Court has expressed, transfer is warranted to allow for the litigation to proceed in a more convenient forum, not merely "a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46. It follows that the forum also does not have to be the most convenient

18

forum and, generally, it is recognized that a chosen forum need not be the forum with the most substantial connection. *See First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir.1998); *Nat'l City Com. Cap. Co., LLC v. Caliber Homes*, LLC, No. C-1-08-468, 2009 WL 4043336, at *8 (S.D. Ohio Nov. 19, 2009); *Trustar Funding v. Mruczynski*, No. 1:09CV01747-CAB, 2010 WL 1539759, at *10 (N.D. Ohio Mar. 30, 2010), *report and recommendation adopted*, No. 1:09CV1747, 2010 WL 1539750 (N.D. Ohio Apr. 16, 2010).

While the lack of connection to this specific district is not controlling for finding personal jurisdiction, it weighs heavily in favor of transfer under the § 1404(a) analysis. It is well-established that when no relevant acts occur in this district, transfer is favored to a district with greater local interest. *See, e.g.*, *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039, 1050 (S.D. Ohio 2002) (holding that transfer was favored when no acts relevant to the cause of action occurred in the Southern District of Ohio); *Zimmer v. AIG VALIC*, No. 1:06-CV-131, 2006 WL 8442236, at *3 (S.D. Ohio July 20, 2006) (recognizing that transfer was favored when "all relevant Defendants are headquartered in the Southern District of Texas and are major employers there" and the case included "neither a resident person or corporation of the Southern District of Ohio."); *Carter v. Hagens Berman Sobel Shapiro LLP*, No. 5:16CV616, 2017 WL 995528, at *2 (N.D. Ohio Mar. 15, 2017) (finding the local interest in resolving this matter weighed in favor of transfer when there was a stronger local interest in the requested jurisdiction).

No activity relevant to this cause of action occurred in the Southern District of Ohio and the only party or non-party identified in the Southern District of Ohio is the Plaintiff. Rather, the relevant activity referenced in the Amended Complaint took place in the Northern District of Illinois; ALPA's governing body in charge of representing Plaintiff is in the Northern District of

19

Illinois; and United, while not a named Defendant, is a relevant non-party headquartered in the Northern District of Illinois.

Accordingly, the public interest factors weigh heavily in favor of transfer. These factors together with the convenience of witnesses support a transfer of venue to the Northern District of Illinois "[f]or the convenience of parties and witnesses, in the interest of justice." *See* 28 U.S.C. § 1404(a).

### C. Motion to Dismiss

As this Court has granted the Motion to Transfer, ALPA's Alternative Motion to Dismiss is **DENIED as moot**.

### IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the Motion to Transfer Venue. (ECF No. 31). Accordingly, the pending motion to transfer venue filed in response to the original complaint (ECF No. 23), and motions to dismiss filed in response to the original and Amended Complaint (ECF Nos. 24, 32) are **DENIED AS MOOT**. It is **ORDERED** that this action is **TRANSFERRED** to the United States District Court for Northern District of Illinois.

**IT IS SO ORDERED**.

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 31, 2025**